(No. 39875.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSÉ SUAREZ PELEGRI, Plaintiff in Error.

*Opinion filed May 29, 1968.*

WARD, J., took no part.

MICHAEL SCHIESSLE, of Park Ridge, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and E. JAMES GILDEA, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

José Suarez Pelegri was convicted of murder in a bench trial in the circuit court of Cook County and sentenced to a term of 14 to 20 years imprisonment. In this direct appeal the defendant claims that his conviction should be reversed because (1) the closing argument of the prosecution misstated the facts in evidence; (2) the State impeached a defense witness on the basis of a prior inconsistent written statement which was not admitted into evidence; (3) the State presented rebuttal testimony which did not contradict any testimony of the defense witnesses; (4) the defendant's guilt was not proved beyond a reasonable doubt; and (5) the defendant was denied the right to confrontation of witnesses because he could not speak English.

On the night of April 6, 1963, Jorge Luiz Diaz Rosa died in the kitchen of the Roman Restaurant in Chicago as the result of hemorrhaging from two stab wounds inflicted in the back of the neck and lower left side of the back. Both the State and defense agree that Pelegri inflicted the mortal wounds, but the defendant and his eyewitnesses claim that he acted in self-defense, while the State's eyewitnesses related circumstances which, if true, were sufficient to support the murder conviction.

The witnesses called by the State included two patrons of the Roman Restaurant who were present when Rosa was killed. One of those witnesses, José Echevarria, testified that he met the deceased at about 8:30 P.M. on April 6 in front of a building managed by Echevarria. The witness stated that Rosa invited him to go to the Roman Restaurant for a beer, and they proceeded to the restaurant where they seated themselves at the counter. Rosa asked the defendant, who worked there as a waiter, for two beers, and when defendant spilled some of the beer on him, Rosa asked, "What kind of service was that?" According to Echevarria the defendant responded, "I don't care. I am

a man", to which Rosa replied that he was also a man. The witness testified that at this point defendant slapped Rosa in the face, knocking him to the floor, and then dragged him into the kitchen. Echevarria stated that before he could render any assistance to Rosa he was physically pinned against a wall by Jorge Ortiz, the son of the restaurant owner, and could not thereafter see into the kitchen. The witness testified that he was still being restrained when defendant returned from the kitchen holding a butcher knife with which he proceeded to cut Echevarria's chest; at this point Jorge Ortiz released his grip on Echevarria who then wrestled on the floor with the defendant to avoid being stabbed again. Echevarria stated that he was able to kick free from the defendant, stand up, draw a gun which he carried concealed on his person, and fire it twice in the air. Echevarria ran out of the restaurant after firing his revolver and was chased by two police officers who apprehended him, and took him to a hospital for treatment of his knife wound.

Carlos Luiz Alvarez, the second eyewitness presented by the State, was also a customer at the Roman Restaurant when Rosa was killed. His version of events leading up to the stabbing substantially paralleled the testimony of Echevarria, but Alvarez described certain additional facts which apparently were not seen by Echevarria because they occurred when he was being held against the wall by Ortiz. Alvarez testified that the defendant spilled some beer onto the deceased and that this precipitated an oral exchange between the two men which led to defendant knocking the decedent to the floor. The witness stated that when Echevarria tried to help the decedent, Ortiz restrained him against a wall, and that defendant then used a table leg from under the counter to hit the deceased on the head while the latter was still lying on the floor. Alvarez, unlike Echevarria, testified that his position in the restaurant was such that he was able to see into the kitchen where the

defendant dragged decedent. The witness related that when he saw that defendant was about to stab decedent who was lying face down on the kitchen floor, he (Alvarez) hit the defendant in the back with a cue stick from the restaurant's pool table but this did not prevent the stabbing. Alvarez's testimony regarding the defendant's subsequent attack on Echevarria was substantially identical to the account of events given by Echevarria; however, after Echevarria ran out of the restaurant, Alvarez testified that he became frightened when he saw defendant take a bag from the counter, and that he ran up the back stairs of the restaurant to the second-floor back porch from which he saw defendant throw a bag in the garbage can located at the corner of Superior and Wells.

The remainder of the State's case consisted of testimony given by police officers who were involved in the investigation of the crime. Officer George Ross testified that he found a large butcher knife, covered with fresh blood, stuffed in a brown paper bag which had been placed in a garbage can near the building in which the restaurant was located. Officer Ross and Officer John McCarthy testified that they were present when the defendant was taken to the Henrotin Hospital for treatment of a 6-inch leg wound which he claimed at his trial had been inflicted by the deceased. However, Officers Ross and McCarthy testified that when defendant was asked at the hospital how he was wounded he stated that he cut himself. Chicago Police Officer Luis Alvizu testified that on April 7 he questioned the defendant in Spanish at the Bridewell Hospital where the latter had been taken. The officer stated that when he asked the defendant how he cut himself Pelegri responded that he did not remember, but the officer testified further that the defendant admitted he had been in a fight with decedent, that he had first slapped the deceased and then hit him with a stick, and that defendant at that time had a knife in his possession.

The defense presented on behalf of defendant consisted of the testimony given by him and three other witnesses. The defendant testified that he had beaten Rosa in several games of pool earlier in the evening of April 6 and that this had angered the deceased. Defendant contended at his trial that when Rosa and Echevarria entered the restaurant they made various offensive remarks to him, that they along with Alvarez attacked him, that during the struggle Rosa cut the defendant's leg with a knife in the kitchen, and that when defendant emerged from the kitchen he cut Echevarria in the chest because Echevarria was attempting to shoot him. The three other witnesses called by the defense were Jorge Ortiz, his sister Milagros Ortiz, and their mother Mrs. Esperanza Ortiz. Defendant admitted that he was Milagros' "boyfriend", and that he referred to Mrs. Ortiz as his "mother-in-law."

There were many material contradictions and omissions in the testimony of these witnesses. For example, during direct examination defendant did not mention that he had ever stabbed decedent; he testified that when decedent left the restaurant after losing four games of pool the latter warned that he would be back, but Esperanza and Milagros Ortiz testified that decedent said that he would never come back; defendant testified that he worked all day at the Roman Restaurant starting at 10:00 A.M., except for "twenty minutes or an hour" when he left to take a bath, but Mrs. Ortiz stated that the defendant did not leave the restaurant on April 6 anytime between 9:00 A.M. and 6:00 P.M. and that she would have known if he had. Contrary to the defendant's own admission during the trial, Mrs. Ortiz testified that when defendant and Echevarria were struggling the former did not have a knife in his hand; Mrs. Ortiz further contradicted defendant's testimony when she said that only Alvarez and decedent attacked the defendant because, she stated, at the time the fight started Echevarria was outside of the restaurant; and Milagros

Ortiz, who claimed to be an eyewitness to most of the affray, completely failed to place Luiz Alvarez at the restaurant on April 6.

At the conclusion of the State's final argument the trial judge made the following comment: "There is no question in my mind that there were a mass of contradictions in the testimony of the defense witnesses." In this appeal defense counsel urges that the court's statement resulted from the confusion engendered by the prosecutor's closing argument which mis-stated the facts in evidence, but it seems apparent to us that it was prompted by the testimonial discrepancies above referred to. Because of these inconsistencies in the testimony among the defense witnesses, we, like the trial court, believe that the defendant did not establish his claim of self-defense. To the contrary, we find that the physical evidence in the case, the testimony of the officers, and the damaging admissions made by defendant and Jorge Ortiz while in police custody corroborated the testimony of the State's eyewitnesses to an extent which adequately established the defendant's guilt beyond a reasonable doubt. When the trier of fact renders a decision based upon credible and substantial evidence which is sufficient to convict, that verdict is not subject to question on review merely because the judge or jury chose to believe the consistent testimony presented by the State. *People* v. *Neukom,* 16 Ill.2d 340, 347; *People* v. *Stevens,* 11 Ill.2d 21; *People* v. *Kelly,* 8 Ill.2d 604.

At trial, the defendant objected to but few of the 27 instances which he now raises as improper closing argument on behalf of the State, and the failure to preserve most of these points by objection forecloses our consideration of them on appeal. (*People* v. *Donald,* 29 Ill.2d 283, 287; *People* v. *Winters,* 29 Ill.2d 74, 80; *People* v. *Sinclair,* 27 Ill.2d 505, 509.) The record shows that the trial judge did sustain defense objections to those portions of the prosecutor's final argument which were in fact im-

proper, and at one point the court assured defense counsel not to "worry about anybody usurping the Court's thinking on the subject." We find nothing in this case that would warrant deviation from the soundly based presumption that the court in a bench trial relies only on proper evidence and argument. *People* v. *Robinson,* 30 Ill.2d 437, 439; *People* v. *Cox,* 22 Ill.2d 534, 539.

During part of the State's cross-examination of Jorge Ortiz he was questioned, with the aid of an interpreter, regarding what he observed during the struggle between defendant and decedent, as follows:

"Q. All right. Now, after they struggled in the kitchen, did you see a knife in anyone's hands * * *?

A. I saw a knife in the hands of the other.

Q. Mr. Rosa?

A. Yes.

Q. As he was struggling with the defendant? Ask him if he saw the knife in the hand of Mr. Rosa when he was struggling with Mr. Suarez. [Defendant.]

A. Yes, in the hands of Rosa.

Q. All right. Did he even see a knife in the hands of the defendant at that time?

A. Well, when the man with the gun [Echevarria] came in and told me that he was going to kill me like a dog, I went into the toilet.

Q. And that's the last thing he saw?

A. Then when I came out from the toilet, I saw Rosa face down."

Shortly after this colloquy, the witness was asked for purposes of impeachment whether he had told police that defendant had the knife when he and Rosa were rolling on the floor of the restaurant. Ortiz admitted that he had given that answer when questioned by two officers at the Chicago Avenue Police Station on April 7. Later in the course of the trial it was brought out that the witness's answers had been recorded in a written statement which had been signed

by him, but this writing was never offered for admission into evidence. In this appeal the defendant contends for the first time that the failure to present the writing for admission constituted a violation of the best-evidence rule, and that the police station statement of Ortiz was not actually inconsistent with the witness's trial testimony set out above. We cannot agree that Ortiz's trial testimony, to the effect that he saw only the deceased in possession of a knife during the struggle, was not in fact impeached by his prior statement to police that the defendant "had the knife when they were rolling on the floor." Moreover, the defendant's best-evidence argument fails because where a witness admits having made the contradictory statement, the statement itself is not required to be introduced into evidence. (3 Wigmore on Evidence 268 (1964 Supp.) ; *Rau* v. *First National Stores,* 97 N. H. 490, 92 A.2d 921, 924; see also *People* v. *McCrimmon,* 37 Ill.2d 40, 46-7.) Nor was it erroneous to permit Officer Alvizu to testify on rebuttal (1) that he was present at the Bridewell Hospital during Pelegri's admission that he had a knife in his hand when he argued with Rosa, and (2) that he was a witness to Jorge Ortiz's police-station admission when Ortiz stated that he had seen a knife in the defendant's hands during the defendant's struggle with Rosa. The officer's rebuttal testimony was corroborative of the State's case in chief, contradictory of the defendant's evidence and therefore properly admitted. (*People* v. *Burnett,* 27 Ill.2d 510, 518; *People* v. *Griswold,* 405 Ill. 533.) It is not an abuse of trial court discretion during a bench trial to allow testimony in rebuttal which might have been offered in chief (*Brelsford* v. *Community High School Dist. No. 36,* 328 Ill. 27; *Cooper* v. *Shaffer,* 313 Ill. App. 392), or to allow slight repetition of facts already in evidence to emphasize a disputed point upon which substantial contest had not been expected. 6 Wigmore on Evidence 516 (3d Ed. 1940).

Finally, we hold that the defendant's asserted constitu-

tional question which gave us direct appellate jurisdiction is wholly lacking in merit. In a case where defense counsel spoke Spanish so fluently that he often corrected the expert interpreter, we do not believe it is even arguable that the defendant who sat at his attorney's side was denied the right to confront the witnesses against him. Near the beginning of the trial defendant's counsel asked that both sides be permitted to use one interpreter to pose questions to witnesses who lacked facility in English "rather than bring in a multiplicity of interpreters", and the defendant may not now complain because he was not provided with an interpreter (in addition to his attorney) to give him a running account of the testimony of witnesses many of whom were questioned and responded in Spanish.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.