THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD KAYLOR, Defendant-Appellant.

(No. 11298;

Fourth District—March 11, 1971.

Richard Hart, of Springfield, for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (Arthur R. Strong, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The defendant appealed from a finding of guilty by a jury on a charge of forgery and a subsequent sentence to the penitentiary, in which the trial court fixed the minimum and maximum periods of confinement at two years and ten years respectively.

The issues presented for review are as follows:

1. Was People's Exhibit No. 1 properly received into evidence?

2. Did the defendant at the time of the offense possess the requisite mental state to render him accountable for the offense, or was the proof of his addiction to alcohol sufficient to prevent him from forming that mental state?

3. Should the sentence be reduced pursuant to Supreme Court Rule 615, ch. 110-A, par. 615, Ill. Rev. Stat. 1969?

The record indicates that on the evening of June 29, 1969, the defendant entered a taven in Springfield, Illinois, and presented a check for payment of a beer for himself and other patrons at the bar. The check in the amount of Fifty Dollars and ninety-three cents ($50.93) bore

the forged signature of "John W. Kaylor". At the trial this check was identified by the bartender who recalled that when he took the check from the defendant he indicated his reluctance to cash the check, but was assured by the defendant that the owner of the bar would accept the check if he were there. The bartender testified that another patron looked at the check and verified the financial ability of its purported drawer. Thereafter, the bartender cashed the check and delivered the change to the defendant, together with the drinks he had purchased for himself and the other patrons. The defendant describes himself as one who drinks excessively, as much as two-fifths of alcoholic beverages a day.

The defendant left the tavern after cashing the check, and shortly thereafter the owner of the bar came into the tavern and picked up the check. The owner does not remember what he did with the check, other than to unsuccessfully present it for payment the next day.

The jury that heard the case was given Illinois Pattern Jury Instructions, Criminal, No. 24.02. This instruction designed for use with ch. 38, par. 6—3(a), Ill. Rev. Stat., is as follows:

"An intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly."

■■ The appellant's first contention is that the State failed to show a continuous chain of possession of the fraudulent check. The evidence discloses that the bartender identified the check presented to him in court as the check he had received from the defendant on the night of June 29th in payment for the drinks which the defendant purchased. The owner of the tavern also identified the check, being "People's Exhibit No. 1", as the check which had been given him by the bartender and purportedly signed by John W. Kaylor. The bartender, by identifying "People's Exhibit No. 1" as being the check given to him by the defendant in purchase of the alcoholic liquor, made unnecessary any proof of the chain of evidence about which the appellant complains. Problems of identification may arise when exhibits pass from the hands of investigative officers through the hands of expert witnesses and ultimately into the hands of the prosecution, since by reason of the treatment of those exhibits, or by reason of the nature of the exhibits themselves, they tend to lose identity. There is no such problem in this case. No serious contention is made that "People's Exhibit No. 1" was changed or altered in any way. Appellant's objection to the admission of "People's Exhibit No. 1" into evidence is not well taken. *People v. Fisher*, 340 Ill. 216; 172 N.E. 743 and *U.S. v. S. B. Penick*, 136 F.2d 413, 415.

■■ We next consider whether the defendant, at the time of the offense, possessed the requisite mental state to make him accountable for the

offense, or was the proof of his addiction to alcohol sufficient to prevent him from forming that mental state. Historically, under Illinois law, intoxication as such, is not a defense to the commission of a crime. This principle of law was ameliorated by the recognition of the State's obligation to prove "a state of mind" as an essential element of certain offenses. There are numerous decisions in Illinois holding that where intent is a necessary element of the crime charged, the defendant cannot be convicted if it is shown that he was so intoxicated as to have been incapable of forming the requisite intent. Ch. 38, par. 6—3(a), Ill. Rev. Stat. 1967. *People v. Lion*, 10 Ill.2d 208—214, 139 N.E.2d 757; *People v. Hare*, 25 Ill. 2d 321, 326, 185 N.E.2d 178 and *People v. Minzer*, 358 Ill. 345, 193 N.E. 370.

■■ The crime of forgery is a specific intent crime, and the defense thereto in this case is an affirmative one. Under such circumstances, the defendant has the initial obligation of contraverting the State's case by something that is the equivalent to *prima facie* proof of the affirmative defense. Thereafter, the State is required to assume the burden of proving the defendant guilty by proof beyond a reasonable doubt. *People v. Warren*, 33 Ill.2d 168, 210 N.E.2d 507; and *People v. Honey*, 69 Ill.App. 2d 429, 217 N.E.2d 371.

A review of this issue causes us again to turn to the evidence of the bartender who testified that the defendant was seated on the end stool at the bar. He remembers nothing unusual about the defendant except that he was very polite and very sensible, and that he had a portable radio under his arm which he told the bartender he had won in a raffle; and he also indicated that he had never been lucky before. The bartender said the defendant remained in the tavern about fifteen minutes. The bartender then related his conversation with the defendant concerning the check, (People's Exhibit No. 1) previously described herein. He further testified that he did not believe the defendant had been drinking. Capsulized, the defendant's testimony is that he is a chronic alcoholic and was drinking excessively for a week before June 29, 1969, the date the check was given, and that he has no recollection of being in the tavern.

■■■ Proof that the defendant was a chronic alcoholic does not exempt him from criminal responsibility. The condition of the defendant at the bar on the night of June 29, 1969, as to drunkenness or sobriety is not established by his categorization as a chronic alcoholic. The defendant's testimony that he has no recollection of being in the bar was undoubtedly considered by the jury. However, when the jury's decision can be seen to be based on credible and substantial evidence which is' sufficient to convict, that verdict is not subject to question on review, merely

because the jury chose to believe the evidence presented by the State. (*People v. Pelegri*, 39 Ill.2d 568, 237 N.E.2d 453.) In *People v. Jones*, 99 Ill.App.2d 364, 240 N.E.2d 776, at p. 779, it is stated:

"Finally, defendant contends that his felonious intent was not established beyond a reasonable doubt because the evidence proved that he was too intoxicated to entertain said intent. In order for intoxication to constitute a valid defense the defendant must show that his inebriated condition was so great as to prevent him from forming the intent essential to the crime charged. (*People v. Reynolds*, 27 Ill.2d 523, 190 N.E.2d 301.) Whether the foregoing situation is indeed the case is a question of fact to be determined by the trier of fact on the basis of the evidence introduced before him. *People v. Cozzie*, 397 Ill. 620, 74 N.E.2d 685."

The jury was properly instructed on the issue raised by the affirmative defense of intoxication as a defense to the crime charged. Our review of the evidence persuades us to the opinion that no reasonable basis exists that would justify overturning the conclusion reached by the jury as shown by their verdict.

■■ Lastly, we reach the question as to whether the sentence was excessive, and whether it should be reduced in accord with the authority contained in Supreme Court Rule 615. The trial court conducted a hearing in mitigation and aggravation and was advised that the defendant had been involved in several previous fraudulent or fictitious check charges. As a result of one of these charges, the defendant was sentenced to and served a term in the penitentiary. Review Courts in Illinois follow the advice found in the English cases to the effect that they should not "tinker" with sentences, or attempt to substitute their judgments for that of the trial courts. In this area, Appellate Courts should proceed with circumspection, recognizing that the trial judge has a superior opportunity to hear and to observe the demeanor of witnesses and obtain a "feel for the case" that is denied to the judges on review. Our statute, ch. 38, par. 1—2(c) (d), Ill. Rev. Stat. 1969, directs that penalties imposed by courts should be proportionate to the seriousness of the offense, and should recognize the philosophy of rehabilitation possibilities among individual offenders and should not be arbitrary or oppressive. The record in this case discloses that the trial judge imposed a meaningful sentence that is neither harsh nor oppressive and accommodates itself to the goal of rehabilitation.

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.