# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Burton**, 2012 IL App (2d) 110769

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY BURTON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0769 |
| Filed<br>Rehearing denied | November 20, 2012<br>December 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant failed to object when the prosecutor referred to inadmissible evidence during closing argument by stating that the State's chief witness was credible because he made a consistent statement prior to trial and the plain-error doctrine did not apply, since the record did not affirmatively rebut the presumption that in defendant's bench trial, the court did not consider that evidence. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-CF-3044; the Hon. Allen M. Anderson, Judge, presiding. |
| Judgment | Affirmed as modified. |

| Counsel on Appeal | Thomas A. Lilien and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Presiding Justice Jorgensen and Justice Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a bench trial, defendant, Jerry Burton, was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2008)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2008)), and unlawful use of a weapon (720 ILCS 5/24-1(a)(7)(ii) (West 2008)). The trial court denied defendant's posttrial motion for reconsideration of the finding of guilty and for a new trial. Thereafter, the trial court sentenced defendant to six years in prison followed by a three-year term of mandatory supervised release. Defendant was assessed a $400 fine and $310 in costs. Defendant timely appealed. The issues are: (1) whether the State's comment during closing arguments that the testimony of its key witness was credible, because the witness had given a prior consistent statement to the police immediately after the incident, warrants a new trial under the plain-error doctrine; and (2) whether defendant is entitled to monetary credit against his $400 fine, where he spent 86 days in presentencing custody. For the reasons that follow, we affirm the judgment as modified to reflect full credit awarded against defendant's fine.

¶ 2                                  I. BACKGROUND

¶ 3     The following evidence was presented at trial. Montgomery police officer Ismael Diaz testified that, during the early morning hours of October 25, 2009, he pulled over a minivan for driving through a red light. Defendant was the driver. Joseph Budnick was sitting in the front passenger seat, and Peter Straus was sitting in the middle row of seats. After learning that defendant's driver's license had been revoked, Diaz arrested him. Budnick and Straus were placed into temporary investigative custody. Diaz conducted an inventory search of the minivan, because it was going to be towed to an impound lot. Diaz described the interior of the minivan as having two "captain seat[s]" in the front and two rows of "bench[ ]" seats. During the search, Diaz discovered a sawed-off shotgun on the floor between the rows of bench seats. Diaz later interviewed Straus at the police station. Straus provided a written

statement. Diaz identified People's Exhibit No. 4 as Straus's statement. The statement was not admitted into evidence. Diaz could not recall who owned the minivan, but he stated that defendant was not the owner.

¶ 4    Montgomery police officer Adam Kuncl identified People's Exhibit No. 1 as a shotgun having a barrel measuring just under 15 inches. The gun was admitted into evidence along with People's Exhibit No. 2, ammunition.

¶ 5    Budnick testified that he was with defendant and Straus in the hours leading up to the traffic stop. Budnick and Straus picked up defendant and went to a house party. The three men were drinking, "smoking weed," and doing "a little coke." At some point during the party, he and defendant left and went to defendant's house "to get some weed and a bowl." Defendant drove and Budnick sat in the passenger seat. When they arrived at defendant's house, defendant went inside the house for about 10 minutes while Budnick waited in the minivan. When defendant returned to the minivan, he opened the sliding door behind Budnick. Budnick did not see what defendant was doing. Defendant closed the door and then entered the minivan. Budnick asked defendant "if he got the smoke and [defendant] said, yeah." They returned to the party and stayed for about two hours. When the three men left the party, defendant drove the minivan, Budnick sat in the front passenger seat, and Straus sat in the row behind them. Defendant blew a stoplight, and an officer pulled them over. Budnick was drunk, "[l]ike falling asleep." Budnick did not see the gun until after the officer removed it from the minivan.

¶ 6    Straus testified that, during the evening of October 24, 2009, into the early morning hours of October 25, 2009, he was with defendant and Budnick. They were in his minivan and doing some "bar hopping." They were drinking; they did not do any drugs. When they were done bar hopping, they went to a party. Defendant drove because Straus had been drinking. At some point during the party, defendant and Budnick drove off in Straus's van to get something to eat. Straus remained at the party, because he "was talking to a young lady." When defendant and Budnick returned, they remained at the party for a while. Eventually, the three men left in Straus's van, with defendant driving. Straus was sitting in the middle row of seats. According to Straus, when an officer pulled the van over, defendant said something like, "[I]t's not mine," and defendant "pushed [the gun] back towards [Straus]." Straus stated that he "just kind of freaked out and tossed it behind [him]." Straus had no idea there was a gun in the van until that point. Although Straus did not see the gun before defendant pushed it back toward him, he testified that the gun was lying between the two front seats. Straus admitted that he had previously been convicted of aggravated discharge of a firearm and had been sentenced to five years in prison. At the time of the incident, he was still serving mandatory supervised release. He was not allowed to possess guns or bullets. Straus was taken to the police station and provided a written statement. He was truthful when he provided his statement to the police.

¶ 7    The parties entered into the following stipulations. First, all chain-of-custody issues for People's Exhibit No. 1, the firearm, and for People's Exhibit No. 2, the ammunition, had been satisfied. And, second, People's Exhibit No. 1 was tested for, and did reveal, latent fingerprints, and there was no match between the prints on the firearm and those of defendant. In addition, the parties agreed that, if called to testify, Francis Senese, a forensic

scientist, would testify that a person can touch a firearm and not leave prints suitable for comparison.

¶ 8    The State rested, and defendant rested. During closing arguments, defense counsel argued that the "crux" of the case involved the "issue of knowledge." According to defense counsel, the only evidence that defendant knew that the shotgun was in the van came from Straus, whose credibility was dubious given that the weapon was found in his van and that he was on parole for a weapons violation at the time. In response, the prosecutor argued as follows:

"[Defense] [c]ounsel points out that Peter Straus has a reason to lie, motive, bias, reasons to lie. But, Judge, he didn't lie that night.

That night when he talked to the police officers without ever being promised anything, after being read Miranda and told what you say can and will be used against you in a Court, what does he do? He incriminates himself.

He tells that officer, I was in this car. This gun got pushed back to me. I then pushed it further back, saying that he then knew that there was a gun in that car and that he actually helped to push it away so that officers maybe wouldn't see it.

He incriminated himself. Why would he do that?

Judge, he did that because he just was telling the truth.

When he told those officers what happened that night, if he had a reason to lie, if he had a motive and bias to lie, he would not have told officers that he knew anything about that gun."

¶ 9    The court found defendant guilty. In doing so, the court stated that it considered Budnick's testimony that defendant opened and closed the rear door of the van. In addition the court stated:

"But the crux of this would seem to be Mr. Straus' testimony as to the physical passing back or pushing back of the weapon under his testimony.

The Court, considering his bias and his possible interest, nevertheless, had the opportunity to observe the manner in which he testified, observed what he had to say and the response to the questions that were asked of him both on direct and cross examination.

In my opinion, Mr. Straus is credible in indicating that this weapon was in a place where it was visible and that the defendant acted in a manner and fashion to control the weapon by the movement of the weapon.

The testimony of passing it back, whatever the phraseology was, put the weapon where the defendant was and moving it away in response to the officer coming to the scene.

The Court does not have a reasonable doubt that given all the factors, including the size of the weapon, that the defendant did not [*sic*] have knowledge."

¶ 10    The trial court denied defendant's posttrial motion for reconsideration of the finding of guilty and for a new trial. Following sentencing, defendant timely appealed.

¶ 11                                    II. ANALYSIS

¶ 12        Defendant argues that he was denied a fair trial when the State argued in closing that the testimony of Straus, its key witness, was credible because he had given a prior consistent statement to the police immediately after the incident, even though the statement had not been admitted into evidence and, in fact, could not have been admitted. Defendant did not, however, object to these comments when made, nor did he raise the issue in his written posttrial motion. Accordingly, defendant has forfeited review of this issue. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphases in original.)).

¶ 13        Defendant concedes that he forfeited this issue but argues that it is reviewable under the plain-error doctrine. The plain-error doctrine permits a court of review to consider error that has been forfeited when either

            "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] Prejudice to the defendant is presumed because of the importance of the right involved, '*regardless* of the strength of the evidence.' (Emphasis in original.) [Citation.] In both instances, the burden of persuasion remains with the defendant." *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

            "The ultimate question of whether a forfeited claim is reviewable as plain error is a question of law that is reviewed *de novo*." *People v. Johnson*, 238 Ill. 2d 478, 485 (2010).

¶ 14        Defendant argues that the issue is reviewable as plain error under the first prong. He maintains that "this was a closely balanced case in which the prosecutor made blatantly improper comments during rebuttal argument regarding a statement that was not admitted into evidence." The State concedes that it was improper for the prosecutor to refer to the substance of Straus's statement, which was not admitted into evidence. See *People v. Adams*, 2012 IL 111168, ¶¶ 16, 20 (prosecutor's comment during closing arguments, that officers' testimony should be believed because they would not risk their credibility, jobs, or freedom by lying on the witness stand, was improper, as no evidence was introduced at trial from which it could be inferred that the officers would risk their careers if they testified falsely). We note, also, that the statement *could not have been* admitted into evidence. See *People v. McWhite*, 399 Ill. App. 3d 637, 641 (2010) ("Generally, statements made prior to trial are inadmissible for the purpose of corroborating trial testimony ***."). However, the State asserts that the error was not reversible, "because the record does not rebut the presumption that the trial court acted properly and considered only competent evidence." We agree.

¶ 15        "Absent reversible error, there can be no plain error." *People v. Naylor*, 229 Ill. 2d 584,

602 (2008). Thus, before we would reach the issue of whether the evidence was closely balanced, "we must determine whether the error is such that would require reversal of defendant's convictions." *Id.* at 603; see also *id.* at 605 ("Having concluded that the trial court committed reversible error, we must next determine whether the evidence presented at defendant's trial was closely balanced."). On review after a bench trial, "a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion." *Id.* at 603; see also *People v. Pelegri*, 39 Ill. 2d 568, 575 (1968) (trial court is also presumed to have relied only on proper closing argument). Unless the record affirmatively rebuts that presumption, any error related to inadmissible evidence is not reversible. *Cf. Naylor*, 229 Ill. 2d at 603-05 (finding reversible error when record affirmatively rebutted the presumption).

¶ 16    Here, although the State referred to inadmissible evidence–which, again, had not been admitted in any event–the record does not affirmatively rebut the presumption that the trial court did not consider it. In finding Straus credible, the court did not reference his prior statement. Instead, it purported to have relied on "the manner in which he testified, *** what he had to say and the response to the questions that were asked of him both on direct and cross examination." That is, as far as the record shows, the court properly credited Straus in light of only his conduct at trial.

¶ 17    Defendant relies on *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). There, the supreme court noted that a defendant is entitled to a new trial if "the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction." *Id.* Thus, defendant asserts that we must reverse his convictions because the record does not affirmatively show that the trial court did not rely on the State's improper argument. However, that assertion flips the law on its head; as noted, we *presume* that the court did not rely on such argument, unless the record affirmatively shows that it *did*. This is precisely why the *Wheeler* standard was specifically tied to jury trials, where no such presumption applies. See *id.* ("If the *jury* could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to defendant's conviction, a new trial should be granted." (Emphasis added.)).

¶ 18    In sum, although the State committed error, such error is not reversible. Thus, regardless whether the evidence was closely balanced, the plain-error doctrine does not apply. See *Naylor*, 229 Ill. 2d at 602-05.

¶ 19    Next, defendant argues that he is entitled to monetary credit toward his $400 fine. Section 110-14(a) of the Code of Criminal Procedure of 1963 provides:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2008).

A defendant may apply for the credit for the first time on appeal. *People v. Caballero*, 228 Ill. 2d 79, 88 (2008). It is undisputed that defendant spent 86 days in custody prior to sentencing and has therefore accumulated a credit of $430. The State concedes that defendant

is entitled to the credit he claims. Accordingly, we modify the mittimus to reflect full credit against his fine.

¶ 20                                III. CONCLUSION

¶ 21        For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed as modified to reflect a credit satisfying defendant's $400 fine.

¶ 22        Affirmed as modified.