2020 IL App (2d) 180720-U
No. 2-18-0720
Order filed December 10, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-1539 |
| ALEJANDRO E. RICHARDSON, | ) ) | Honorable Rosemary Collins, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    There was no error, and thus no plain error, in defendant's sentence of eight years' imprisonment for aggravated battery (great bodily harm) in which defendant severely lacerated the victim's head with blows from a cane; the court considered aggravating and mitigating factors such as defendant's rehabilitative potential and whether the battery was partially justified; the court properly gave weight to the scarring left by the beating, since disfigurement is not implicit in the concept of great bodily harm.

¶ 2    Defendant, Alejandro E. Richardson, appeals from his extended-term sentence of eight years' imprisonment for aggravated battery causing great bodily harm (720 ILCS 5/12-3.05(a)(l) (West 2016)). Defendant asserts that, for a variety of reasons, plain error occurred in his

sentencing. We conclude that no error, let alone plain error, occurred, and we thus affirm defendant's sentence.

¶ 3                                    I. BACKGROUND

¶ 4      A grand jury indicted defendant on two counts of aggravated battery: (1) battery causing great bodily harm (720 ILCS 5/12-3.05(a)(1) (West 2016)); and (2) battery while upon a public way (720 ILCS 5/12-3.05(c) (West 2016)). Both counts related to an incident on June 19, 2016, in which defendant struck Jennifer Ewell on the head with his father's cane. In both counts, the State alleged that defendant was eligible for an extended-term sentence due to prior felony convictions.

¶ 5      At his jury trial, defendant claimed that he struck Ewell in self-defense. The undisputed evidence was that, sometime after 8 p.m. on June 19, defendant had an argument with Ewell and struck her on the top of the head with a cane he took from his father, Billy Massey. The blow lacerated Ewell's scalp. The laceration was "approximately four inches long and a half inch wide" and extended roughly from Ewell's hairline to the crown of her head. It took multiple stitches and staples to close. Ewell reported that, because of persistent headaches, she returned to the doctor several days after the incident and was diagnosed with a concussion.

¶ 6      Ewell and her boyfriend, Damon Simmons, testified that they were walking across a parking lot in the Brewington Oaks apartment complex when they encountered defendant and Massey, both of whom Ewell and Simmons already knew. Ewell and Simmons became involved in an argument with defendant. They crossed the nearest street to the area in front of another apartment complex, but defendant and Massey followed, continuing the argument. A crowd of onlookers was also present. The argument ended when defendant struck Ewell with Massey's cane; according to Simmons, Massey told defendant to "take this cane to hit the Mo's [*sic*]."

Neither Ewell nor Simmons made any threatening movements toward defendant before he struck Ewell. The blow bent the cane and forced Ewell to sit. Simmons admitted that, after defendant struck Ewell, he took a knife from his back pocket and chased defendant across the street.

¶ 7 According to defendant, he and Massey tried to walk away from the argument in the Brewington Oaks parking lot by crossing the street. Ewell, Simmons, and a crowd of onlookers followed. During the argument, Ewell pulled a knife from under her shirt, raised it to shoulder or head height, and charged at him. Simmons also came at him with a knife. Defendant grabbed Massey's cane to defend himself. He struck Ewell twice; she dropped the knife after the second blow. Simmons continued to threaten him with a knife. Defendant struck him 8 to 10 times, mostly on the head. He testified that the cane became bent from the multiple blows he inflicted on Simmons, not from either of the blows to Ewell.

¶ 8 Massey testified that both Ewell and Simmons had knives out, but so did about 20 people in the crowd. All of them were threatening defendant.

¶ 9 The jury, which received a self-defense instruction, convicted defendant on both counts.

¶ 10 Defendant's presentencing report showed five prior non-traffic convictions: possession of a stolen vehicle (1988); aggravated battery (1991); unlawful use of a firearm by a felon (1991); first degree battery (Arkansas, 1997); and criminal sexual assault (2003). Also, a prior girlfriend had obtained a plenary order of protection against defendant based on a claim of domestic violence.

¶ 11 Defendant told the presentencing investigator that alcohol consumption was the "most significant reason for his legal involvement" and that "in order to avoid further problems with the law, he must refrain from drinking alcohol." The investigator further wrote:

"The defendant reported he was approximately 15 years old when he first tried alcohol, though he stated he did not drink it often at that age. He reported the peak of his alcohol

use occurred around age 19 when he was consuming alcohol between two and three times each week and this pattern of drinking continued for approximately one year. Since that time, the defendant reported his alcohol consumption fluctuates but has not exceeded three times. The defendant denied ever experiencing addiction to alcohol, though he stated his alcohol use has contributed to his criminality."

Defendant said that his goal for the next five years was to " 'be into real estate and own a couple of food trucks.' " He reported successfully completing anger management and domestic violence counseling programs.

¶ 12    According to the report, defendant "described having a turbulent childhood during which he experienced significant and prolonged physical and emotional abuse. He also experienced the loss of his primary caregivers, his grandparents, at a young age. The defendant has a significant family history of substance abuse issues and arrests."

¶ 13    Positive factors for defendant were his completion of high school and some college courses, as well as his interest in completing further courses. Further, defendant expected to have stable housing after completing his imprisonment.

¶ 14    At his sentencing hearing, defendant expressed remorse for his crime. He supplied evidence that his girlfriend, Lisa Gulley, had received a diagnosis of stage-three lung cancer and was mostly dependent on defendant for transportation to medical appointments. Massey did not drive and also relied on defendant.

¶ 15    The State argued that defendant's history of violent offenses mandated a substantial prison term. Thus, the State recommended a sentence of 8 years' imprisonment, 2 years less than the extended-term maximum of 10 years.

¶ 16    The court found that the conviction of aggravated battery (public way) merged into the

conviction of aggravated battery (great bodily harm). On the latter conviction, the court imposed a sentence of eight years' imprisonment. The court noted defendant's history of violent offenses. In response to defendant's claim that his alcohol use was a source of his legal troubles, the court said:

> "[Despite defendant's comments] alcohol doesn't make someone violent. People may loosen their inhibitions and it may reduce their judgment but alcohol doesn't change somebody. And many people drink too much, sometimes drinking to the point of intoxication, and many people do not choose to resort to violence when that occurs. So alcohol can't be an excuse for criminal behavior, the criminal behavior is strictly due to [defendant's] actions and how [he] decided to handle a situation at that particular time."

The court also took note of many of the factors listed in the presentencing report. The court noted that the blow caused Ewell a concussion and left a noticeable scar near her hairline. The court also considered Ewell's claim that the incident left her afraid to walk outside alone. At the same time, the court took note of defendant's caregiving roles and found that his remorse was genuine. However, the court concluded that defendant had "in fact inflicted serious harm to the victim in this case" and was a "danger to the community."

¶ 17    Defendant did not file a postsentencing motion but did file a timely notice of appeal.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, defendant contends that the trial court made several errors in imposing what he claims is an excessive sentence. He admits that he forfeited all sentencing issues by failing to raise them in a posttrial motion, but he asks us to review his claims for plain error. He identifies six errors in the sentencing:

(1) the court failed to give adequate weight to, or declined to consider, defendant's rehabilitative potential as exhibited by his remorse for his action, his stable housing and employment, and his interest in employment after his imprisonment;

(2) the court improperly declined to treat defendant's alcohol use as a mitigating factor;

(3) the court failed to give adequate weight to defendant's role as a caregiver to his father and girlfriend;

(4) the court improperly declined to consider whether there existed "substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense" (730 ILCS 5/5-5-3.1(a)(4) (2018));

(5) the court improperly considered in aggravation the great bodily harm suffered by the victim, a factor inherent to the offense; and

(6) the court gave excessive weight to the need to deter others as a factor in aggravation.

¶ 20    We note first defendant's reliance on cases holding that " '[s]entencing issues are regarded as matters affecting a defendant's substantial rights and are thus excepted from the doctrine of waiver' " (*People v. Wilbourn*, 2014 IL App (1st) 111497, ¶ 9 (quoting *People v. Baaree*, 315 Ill. App. 3d 1049, 1050 (2000)).  Contrary to what this language from *Wilbourn* and *Baaree* suggests, a defendant forfeits claims of sentencing error when he or she fails to raise them in a postsentencing motion.  *People v. Reed*, 177 Ill. 2d 389, 392-95 (1997) (holding that earlier cases that declined to treat postsentencing motions as necessary to preserve sentencing issues for appeal had been superseded by statute, "show[ing] a clear legislative intent to make a post-sentencing motion the functional equivalent of a post-trial motion for purposes of preserving issues for appeal").  Thus,

when a defendant fails to raise a sentencing claim in a postsentencing motion, he or she may raise it only as a claim of plain error. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010)).

¶ 21     The plain-error doctrine serves as " 'a narrow and limited exception' " to the general forfeiture rule. *People v. Szabo*, 113 Ill. 2d 83, 94 (1986) (quoting *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982)).  Illinois's plain-error doctrine is set out in *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005), and clarified in *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).  The *Piatkowski* court explained:

> "We now reiterate that the plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a *clear or obvious error* occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error [(first-prong plain error)], or (2) a *clear or obvious error* occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence [(second-prong plain error)]." (Emphases added.) *Piatkowski*, 225 Ill. 2d at 565.

"In the sentencing context, a defendant must *** show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545.

¶ 22     To find plain error, we first must find reversible error. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008) ("Absent reversible error, there can be no plain error.").  Moreover, that reversible error must be clear or obvious. See *People v. Burton*, 2012 IL App (2d) 110769, ¶ 15 (we must determine whether the error is such that it would require reversal of the defendant's convictions before we reach the issue of whether the evidence was closely balanced).  Only upon finding clear

or obvious reversible error do we apply the two-prong plain-error analysis as such. See *Burton*, 2012 IL App (2d) 110769, ¶ 15.

¶ 23    We find no error, let alone clear or obvious reversible error. "A reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). As a general matter, we may not reduce a sentence that is within the statutory range "unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Horta*, 2016 IL App (2d) 140714, ¶ 40. The "seriousness of the offense is the most important sentencing factor." *People v. Watt*, 2013 IL App (2d) 120183, ¶ 50. And we must not reweigh the factors in aggravation and mitigation. See, *e.g.*, *Alexander*, 239 Ill. 2d at 213 (a reviewing court must not substitute its judgment for that of the trial court merely because it would have given different weight to the sentencing factors). That said, a sentence can constitute an abuse of discretion if the trial court ignored relevant mitigating factors or considered improper factors in aggravation. *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003). The State and defendant agree that defendant, because of his past convictions, was eligible for a Class 3 extended-term sentence of 5 to 10 years' imprisonment, thus placing defendant's 8-year sentence within the statutory range. See 730 ILCS 5/5-4.5-40(a) (West 2018) (setting the range).

¶ 24    We find no abuse of discretion in defendant's sentence. Initially, we reject defendant's suggestion that the court erred by failing to find that substantial grounds existed tending to excuse or justify defendant's battery of Ewell, even if they failed to establish self-defense (see 730 ILCS 5/5-5-3.1(a)(4) (2018)). The State and the defense put forward two incompatible descriptions of the events that led to Ewell's injury. The State's witnesses described an attack on Ewell that was provoked by, at most, verbal insults. The defense witnesses described defendant fending off

Ewell's knife attack with the cane. The jury rejected defendant's version of events. None of the evidence supported an intermediate scenario in which Ewell acted in a threatening manner that would have provided a partial justification for defendant's actions. Moreover, Simmons's actions *after* defendant's attack on Ewell are not evidence that Ewell was a threat to defendant *before* he struck.

¶ 25    Defendant's attack on Ewell was particularly serious even for an aggravated battery. Defendant struck Ewell on the head with force sufficient to bend the borrowed cane with which he struck. This suggests a blow delivered with full force. Had defendant hit a more fragile part of Ewell's skull, or had the borrowed cane been stronger and heavier, the injury could have been catastrophic. Thus, although the blow *caused* great bodily harm sufficient to sustain an aggravated battery conviction, it *threatened* much more serious harm. See 730 ILCS 5/5-5-3.2(a)(1) (2018) (that the defendant's conduct threatened serious harm is a factor in aggravation). A relatively severe sentence was thus not "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense" (*Horta*, 2016 IL App (2d) 140714, ¶ 40).

¶ 26    Defendant also argues that the court ignored relevant mitigating factors and considered an improper factor in aggravation. We disagree.

¶ 27    First, the court did not decline to consider defendant's rehabilitative potential. The court noted positive aspects of defendant's character; it recognized his remorse as genuine and that he had value as a caregiver. Defendant's quarrel is ultimately with the weight that the trial court assigned to the factor of rehabilitative potential, but it is not our role to substitute our judgment for that of the sentencing court. See *Alexander*, 239 Ill. 2d at 213.

¶ 28    Second, the court did not error in declining to consider defendant's alcohol use as a mitigating factor. The court believed that defendant's violence came from his character, not his

alcohol consumption. The court was justified in this. Substance abuse is not a statutory factor in mitigation or aggravation, which means that the trial court is not required to view substance abuse as either. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 60. Moreover, "there is nothing inherently mitigating about evidence regarding a defendant's history of drug and alcohol abuse." *People v. King*, 192 Ill. 2d 189, 201 (2000). In fact, substance abuse is often more appropriately deemed an aggravating factor as it can decrease a defendant's rehabilitative potential. *Musgrave*, 2019 IL App (4th) 170106, ¶ 60.

¶ 29    Last, the court did not consider a factor inherent in the offense as aggravating when it noted that Ewell "suffered a tremendous [in]jury to her head resulting in getting ten stitches and staples" and "has a scar, a permanent reminder of this." The court permissibly gave some weight to the severity of Ewell's injury. A court, when it sentences a defendant, cannot properly treat elements of the offense or factors implicit in the offense as aggravating factors. See *People v. Rennie*, 2014 IL App (3d) 130014, ¶ 29. But a court may consider the nature and extent of each element of the offense—including the *degree* of harm to the victim—even when great bodily harm is an element of the offense. See *Rennie*, 2014 IL App (3d) 130014, ¶ 29. "Bodily harm" as an element of ordinary battery requires "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions." *People v. Mays*, 91 Ill. 2d 251, 256 (1982). "Great bodily harm" requires an injury of a greater and more serious character than mere bodily harm, but "is not dependent upon hospitalization of the victim, nor the permanency of [the] disability or disfigurement but, rather, centers upon the injuries the victim did, in fact, receive." *People v. Mimes*, 2014 IL App (1st) 082747-B, ¶ 29. Ewell here suffered some disfigurement, albeit minor, so her injury was more than the minimum for great bodily harm. Thus, the court could properly take into account the scar.

¶ 30                              III. CONCLUSION

¶ 31    For the reasons stated, we conclude that no error, let alone plain error, occurred in defendant's sentencing.  We thus affirm the sentence.

¶ 32    Affirmed.