# Illinois Official Reports

## Appellate Court

---

### *People v. Harris*, 2014 IL App (2d) 120990

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOUGLAS R. HARRIS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0990 |
| Filed | May 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for driving under the influence of alcohol where the trial court found defendant guilty of two counts, one for driving while under the influence of alcohol and one for driving with an alcohol concentration of 0.08 or more, and after overruling defendant's objection to the admission of testimony showing that the Breathalyzer had been certified as accurate, merged the count for driving while under the influence into the second count and sentenced defendant to probation for the count of driving with an alcohol concentration of 0.08 or more, the appellate court reversed that count on the ground that the testimony as to the accuracy of the Breathalyzer was improperly admitted without a proper foundation, reinstated the conviction for driving while under the influence of alcohol, remanded the cause with directions to resentence defendant on that count, directed the trial court to correct the mittimus to show a DNA analysis fee of $250, rather than $200, and granted the State leave to retry defendant on the reversed conviction. |
| Decision Under Review | Appeal from the Circuit Court of Boone County, Nos. 08-CF-154, 08-DT-114, the Hon. John H. Young, Judge, presiding. |
| Judgment | Affirmed as modified in part and reversed in part; cause remanded. |

Counsel on
Appeal

Thomas A. Lilien and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for the appellant.

Michelle J. Courier, State's Attorney, of Belvidere (Lawrence M. Bauer and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Hudson concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant, Douglas R. Harris, was found guilty of one count of failure to stop after having an accident involving personal injury (625 ILCS 5/11-401(a) (West 2008)) and two counts of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(1), (a)(2) (West 2008)). The trial court sentenced him to concurrent probation terms of 30 and 24 months, respectively. Defendant timely appealed. Defendant argues that the trial court erred in allowing into evidence a logbook showing that the Breathalyzer machine used to conduct a breath test on defendant had been certified as accurate, because the State failed to lay the proper foundation. The State maintains that the issue has been forfeited. In the alternative, the State argues that the logbook was properly admitted into evidence. The State also asks that we correct the mittimus to reflect a DNA analysis fee of $250, instead of $200. For the reasons that follow, we affirm as modified in part, reverse in part, and remand.

¶ 2                                    I. BACKGROUND
¶ 3    Defendant was charged, in case No. 08-CF-154, with failure to stop after having an accident involving personal injury (625 ILCS 5/11-401(a) (West 2008)). Defendant was charged, in case No. 08-DT-114, with two counts of DUI. Count I was brought under section 11-501(a)(2) of the Illinois Vehicle Code (the Code) (625 ILCS 5/11-501(a)(2) (West 2008)), which provides that a person shall not drive or be in actual physical control of a vehicle while "under the influence of alcohol." Count II was brought under section 11-501(a)(1) of the Code (625 ILCS 5/11-501(a)(1) (West 2008)), which provides that a person shall not drive or be in actual physical control of a vehicle while "the alcohol concentration in the person's blood or breath is 0.08 or more." The charges stemmed from an incident that occurred on April 21, 2008.

¶ 4    The relevant evidence at defendant's bench trial established the following. Shortly after midnight on April 21, 2008, Boone County police officer Edward Krieger was on patrol, heading south on North State Street, when he saw brake lights activate on a car ahead of him and then saw "a spinning light and taillight spinning." Krieger testified that, as he sped up to investigate, the car continued to travel south. Krieger then observed in the northbound lane a man, later identified as Simon Montez, picking up a motorcycle. Montez told him that the car

had hit him and that he was okay. Krieger called for a patrol officer to check on Montez and then proceeded to follow the car.

¶ 5 According to Krieger, as he was following the car, he observed it travel, without stopping, through intersections controlled by blinking red lights. Krieger activated his emergency lights, and the car pulled over. Krieger testified that there were three people in the vehicle, and he identified defendant as the driver. Krieger placed defendant in custody for leaving the scene of an accident. Krieger observed that defendant's eyes were red and watery and that there was an odor of alcohol emanating from defendant's mouth. At that point, Belvidere police officer Robert Kozlowski arrived on the scene.

¶ 6 Kozlowski testified that he spoke with defendant and also noticed that defendant's eyes were red and watery and that there was an odor of alcohol emanating from defendant's mouth. When Kozlowski asked defendant whether he had had any alcohol to drink, defendant told him that he had had one bottle of beer since breakfast. Defendant had had breakfast at Denny's about 30 minutes earlier. Defendant further told him that he had had a couple of beers before that.

¶ 7 Kozlowski further testified that he performed two sobriety tests on defendant–the walk-and-turn test and the one-leg-stand test. Kozlowski first instructed defendant on how to perform the walk-and-turn test. Kozlowski told defendant to stand heel-to-toe on a yellow parking line with his hands at his sides and to remain in that position as Kozlowski demonstrated the test. As Kozlowski attempted to demonstrate the test, defendant started walking, so Kozlowski told defendant to get back into the starting position; defendant lost his balance while doing so. Kozlowski demonstrated the test, telling defendant to walk heel-to-toe for nine steps, turn and pivot on the ball of his front foot, and walk nine steps back, while counting. When defendant performed the test, he did not touch his heel to his toe on every step; his feet were about six inches apart. Kozlowski next demonstrated the one-leg-stand test, instructing defendant to stand with his hands at his sides, raise one foot six inches off the ground, and count until Kozlowski told him to stop. Defendant performed the test as instructed.

¶ 8 Kozlowski further testified that, after he observed defendant for 20 minutes, he administered a breath test on defendant. Kozlowski identified People's Exhibit No. 4 as a copy of the test-strip printout of the breath test. He next identified People's Exhibit No. 5 as a copy of the log results from the instrument used to perform the breath test. After Kozlowski identified People's Exhibit No. 5, the following occurred:

"Q. ***

Do you see a test prior to the defendant's test, which is a certification test?

A. Yes.

Q. What date was that test ran [*sic*]?

[DEFENSE COUNSEL]: I object, Your Honor, it's hearsay.

THE COURT: It is. She can still get it in. I don't think she's asked those questions yet. He just said it was the log, so at this point it's going to be sustained.

Q. Okay. Are these reports–this log book record–kept in the regular course of business for the Belvidere Police Department?

A. Yes.

Q. Are they kept near the machine?

A. Yes.

Q. Do you see where the test was prior to the defendant's test? Is that a calibration test or an accuracy test?

A. Yes.

Q. What date was that?

A. 3/26/08.

[DEFENSE COUNSEL]: I still object, Your Honor. This isn't a business record because this is an item that is kept by the police department in anticipation of litigation.

THE COURT: Overruled.

Q. Now, looking at the inspection prior to the defendant's test, so in March of 2008 was the machine–was the instrument working correctly that day, the March date?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Again, go ahead and make your objection.

[DEFENSE COUNSEL]: On what basis is this for, was it working properly?

THE COURT: Overruled.

A. Yes, it's certified accurate by Trooper Brezinski.

[DEFENSE COUNSEL]: Continuing objection.

THE COURT: It's continuously overruled.

* * *

Q. Now, looking at the accuracy check after the defendant's arrest, do you see that?

A. Yes.

Q. What date was that?

[DEFENSE COUNSEL]: Continuing objection.

A. 5/22/08.

THE COURT: Excuse me, officer, she's making a continuing objection as to the admissibility of this and I'm continuing to overrule it. You can answer the question.

A. Certified accurate on 5/22/08.

Q. And was the instrument working properly on that date?

A. Yes.

Q. How do you know?

A. It's documented and signed by Trooper Brezinski.

Q. Again are the samples listed on there?

A. Yes.

Q. Now, were there any maintenance officers called between the March accuracy date and the defendant's arrest date?

A. No.

Q. Were there any maintenance officers called between the defendant's arrest date and the next accuracy check date?

A. No.

Q. And how do you know that none of them were called?

A. It would have been documented on this form.

Q. Is it possible for this instrument to fix itself at all?

- 4 -

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

A. At this time what they would do is send a trooper out to calibrate it within every 60 days and I don't believe that it would have that capability.

Q. And if it was working properly on the accuracy check date in March and then working accurately again on–or working properly on the accuracy date after the defendant's arrest, and the department was never notified of any problems, is there any reason to think that the instrument was not working properly on the defendant's arrest date?

A. No."

¶ 9 Kozlowski further testified that defendant took the breath test as instructed by Kozlowski. Over an objection that was overruled, Kozlowski testified that the results showed a blood alcohol level of 0.099. Kozlowski had made more than 150 arrests for DUI and had observed intoxicated people approximately 10,000 times. In his opinion, defendant was under the influence of alcohol and not fit to drive.

¶ 10 Montez testified that, prior to the incident, he had been traveling south on his motorcycle. He had a confrontation at a stoplight with defendant. According to Montez, with Montez in the left lane and defendant in the right lane, defendant swerved his car and cut Montez off. Defendant drove away after hitting Montez. Montez was charged with DUI.

¶ 11 For the defense, defendant's wife, Jeana Harris, testified that she and defendant's brother were in the car with defendant at the time of the incident. Montez had been driving erratically; he was swerving his motorcycle and yelling at them. As defendant entered the left lane to turn left, he passed Montez. Harris heard the motorcycle engine rev up, and Montez hit the driver's door of defendant's car. Montez got up off the ground and came at the car, saying that he was going to kill them. Harris told defendant to drive away and that they would call the police. Harris tried to find her phone, but by the time she did, the police had already pulled the car over. Defendant testified that he did not stop for the flashing red traffic signals because he was trying to get a safe distance away to call the police. According to defendant, he stopped his car to call the police. He did not see the police car behind him, because it did not have its lights on. Other testimony established that Montez had a blood alcohol level of 0.244.

¶ 12 The trial court found defendant guilty of failure to stop after having an accident involving personal injury. The court stated as follows concerning the DUI charges:

"As to the DUI there is a clear–there are two charges, an (A)(1) and an (A)(2). There is a clear BAC over .08. I granted the admission of the log and the stipulation over the defendant's objection. I believe I'm still correct about those, so I would find him, based upon that, guilty of the (A)(1). *Even if I'm incorrect about the objection being correct*, I still think here we have an impact with a vehicle, we have admission, we have an odor, we have signs of impairment on the walk-and-turn and the one-legged stand, and I'd find him additionally guilty of the (A)(2) charge." (Emphasis added.)

¶ 13 Defendant filed an amended motion for a new trial and a directed finding. In the motion, defendant argued, *inter alia*, that "[t]he Court erred in failing to sustain Defendant's objections to the admission of the breathalyzer results." Defendant further stated that he "raises and preserves all arguments and objections made during trial." At the hearing, defendant first argued that he was not proved guilty beyond a reasonable doubt of failing to stop after having

an accident involving personal injury. After counsel made her argument, the following transpired:

> "THE COURT: Obviously, that's the more contested one, but there's also–you want to speak to some of your other paragraphs about objection to admission of breathalyzer results?
>
> [DEFENSE COUNSEL]: Oh, Your Honor, I did object, I do not believe the proper foundation was made by the State, but I was just preserving that, Your Honor."
>
> THE COURT: All right. All right, thank you."

Thereafter, the trial court heard a response from the State on defendant's sufficiency-of-the-evidence argument and ultimately denied defendant's motion.

¶ 14 Following a sentencing hearing, the trial court sentenced defendant to 30 months' probation for failure to stop after having an accident involving personal injury and to 24 months' probation for DUI on count II, to be served concurrently. The court merged count I as a lesser included offense. The court also imposed various fees and fines, including a $250 DNA fee, but the written judgment order shows the amount to be $200.

¶ 15 Defendant timely appealed.

## II. ANALYSIS

¶ 17 Defendant first argues that the trial court erred in admitting the logbook into evidence, because the State failed to lay a proper foundation for its admission. In response, the State first contends that defendant has forfeited the issue, because he did not object at trial based on a lack of foundation or raise any specific objection in his amended posttrial motion. In the alternative, the State argues that the logbook was properly admitted.

¶ 18 We first consider whether defendant's argument has been forfeited. To preserve an issue for appellate review, a defendant must object at trial and raise the issue in a posttrial motion. *People v. Coleman*, 227 Ill. 2d 426, 433 (2008). Illinois Rule of Evidence 103(a)(1) (eff. Jan. 1, 2011) states: "(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."

¶ 19 A review of the record shows that, contrary to the State's claim, defendant's objection to the logbook's admission was properly preserved, as the specific ground alleged was apparent from the context of the proceedings. During trial, when the State first attempted to enter the logbook into evidence and questioned Kozlowski about the date of the "certification test," defense counsel objected, arguing that "it's hearsay." As defendant points out, instrument logs certifying the accuracy of Breathalyzer machines are hearsay. See *People v. Russell*, 385 Ill. App. 3d 468, 475 (2008). As such, the evidence may be admitted where the State lays a proper foundation for its admission under the business-records exception to the hearsay rule (725 ILCS 5/115-5(a) (West 2010)). *Russell*, 385 Ill. App. 3d at 475. Here, when counsel objected, the court agreed that the logbook evidence was hearsay and sustained the objection. The State then immediately attempted to lay a business-record foundation for the exhibit. After the State asked a few more questions about the logbook, counsel again objected. This time counsel added, "This isn't a business record because this is an item that is kept by the police department

- 6 -

in anticipation of litigation." The court overruled the objection. When the State inquired the contents of the exhibit showing the accuracy of the machine, defense counsel objected, stating, "On what basis is this for, was it working properly?" That objection was overruled. Counsel objected several more times during Kozlowski's testimony, indicating a objection." The court noted that counsel was "making a continuing objection as to the admissibility of this and I'm continuing to overrule it." Counsel thereafter also objected to admission of defendant's Breathalyzer test results. In the posttrial motion, defendant noted he "raises and preserves all arguments and objections made during trial." And, during the hearing, counsel specifically stated that she did "not believe the proper foundation was made by the State." Thus, although counsel might not have stated specifically during trial or in her motion that her objection was based on a lack of foundation, that ground was apparent from context and both the prosecutor and the trial court understood the nature of the objection. Accordingly, we find that defendant did not forfeit the issue. See *People v. Heider*, 231 Ill. 2d 1, 18 (2008) (finding no forfeiture "where the trial court clearly had an opportunity to review the same essential claim that was later raised on appeal").

¶ 20 We turn now to the merits. Defendant contends that the trial court erred in admitting the logbook into evidence, because the State failed to lay a proper foundation. "Evidentiary rulings are within the sound discretion of the trial court and will not be reversed unless the trial court has abused that discretion. [Citations.] An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. [Citation.]" *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).

¶ 21 As noted above, instrument logs certifying the accuracy of Breathalyzer machines are hearsay, as they rely on statements by an out-of-court declarant (here, Brezinski) to prove the truth of the matter asserted (here, that the machine was certified as accurate). See *Russell*, 385 Ill. App. 3d at 475. Nevertheless, they may be admitted under the business-records exception to hearsay if the State lays a proper foundation. *Id*. Section 115-5(a) of the Code of Criminal Procedure of 1963 (Criminal Code) provides as follows with respect to the foundational requirements for the admission of business records as evidence:

> "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.
>
> All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility." 725 ILCS 5/115-5(a) (West 2010).[1]

---

[1]Illinois Rule of Evidence 803(6) (eff. Jan. 1, 2011) contains the same requirement that the entry must be made at or near the time of the transaction: "(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the

The foundation for a business record may be established through the testimony of any person familiar with the business and its mode of operation; the witness need not be the author or custodian of the document, and the author need not be unavailable to testify. *People v. Virgin*, 302 Ill. App. 3d 438, 449-50 (1998).

¶ 22 Defendant argues that Kozlowski's testimony regarding Brezinski's certification of the accuracy of the Breathalyzer machine was deficient because Kozlowski did not testify that the record was made in the regular course of business and at the time of the transaction or within a reasonable time thereafter. We agree. A review of Kozlowski's testimony makes clear that, although he testified that the record was kept in the regular course of business for the Belvidere police department, he never testified that "it was the regular course of such business to make such memorandum or record *at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.*" (Emphasis added.) 725 ILCS 5/115-5(a) (West 2010). Although the State argues that Kozlowski, as a member of the Belvidere police department, had the requisite personal knowledge to testify about the certification of the Breathalyzer machine and about the logbook and was certified to use the Breathalyzer, this does not overcome the deficiency in his testimony. Kozlowski's testimony that the machine was working properly was premised on the fact that the logbook was "documented and signed by Trooper Brezinski." Kozlowski testified that the logbook was kept in the regular course of business and that it was kept near the Breathalyzer machine; however, the State presented no testimony that Brezinski documented and signed the logbook "at the time of such [certification] or within a reasonable time thereafter." *Id.* Without this testimony, the State failed to lay the necessary foundation. Accordingly, we find that the trial court abused its discretion in admitting the logbook into evidence. Further, without evidence of the accuracy of the Breathalyzer machine, the results of the Breathalyzer test were improperly relied on. Thus, we reverse defendant's conviction on count II.

¶ 23 Although we are reversing defendant's conviction on count II, we note that the trial court also found defendant guilty on count I. Defendant acknowledges that he was found guilty on both counts, but argues that a reversal on count II warrants a new trial on both counts, because "it is impossible to say that the trial judge's finding of guilt on both DUI counts was not influenced by the judge's consideration of the defendant's alleged BAC level of .099." We disagree. In finding defendant guilty, the trial court specifically stated that, even if it was wrong concerning its ruling on the admissibility of the logbook as to count II, it was also finding defendant guilty on count I, based on defendant's admission to drinking, the impact with Montez, the odor of alcohol, and other signs of impairment. Because the trial court made clear that it was finding defendant guilty on count I without taking into consideration the results of the Breathalyzer, we find no basis to conclude otherwise. See *People v. Burton*, 2012 IL App (2d) 110769, ¶ 15 (on review after a bench trial, we presume that the trial court considered only admissible evidence and, unless the record affirmatively rebuts that presumption, any error related to inadmissible evidence is not reversible). Accordingly, we reinstate defendant's conviction on count I.

testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness, but not including in criminal cases medical records. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

¶ 24    Although we are not granting defendant's request for a new trial on both counts (as we are instead reversing one conviction and reinstating the other) and do not see any benefit to be gained from a new trial on count II, we note that, should the State wish to retry defendant on count II, a retrial would not subject defendant to double jeopardy, as the evidence was sufficient to convict him. See *People v. Taylor*, 76 Ill. 2d 289, 309 (1979). Should the State decide that it will not retry defendant on count II, defendant is entitled to a new sentencing hearing on count I. See *People v. Alvine*, 192 Ill. 2d 537 (2000) (the defendant, who was convicted of both knowing murder and felony murder and sentenced to death for knowing murder but not sentenced for felony murder, was entitled to a new sentencing hearing on remand after the supreme court reversed his conviction of knowing murder and the State declined a retrial).

¶ 25    Finally, the State asks that we correct the mittimus to reflect a DNA analysis fee of $250. Defendant makes no objection. As the State alleges a voidness, it may raise this issue. See *People v. Thompson*, 209 Ill. 2d 19, 24-25 (2004). When defendant committed the offense, the DNA analysis fee was $200. See 730 ILCS 5/5-4-3(j) (West 2008). However, when he was sentenced, the DNA analysis fee was $250. 730 ILCS 5/5-4-3(j) (West 2012). Defendant is required to pay the fee in effect at the time of sentencing, not at the time of the offense. *People v. Dalton*, 406 Ill. App. 3d 158, 163 (2010). Although the trial court orally ordered a $250 DNA analysis fee, the written judgment reflects a $200 DNA analysis fee. Accordingly, we modify the mittimus to reflect a $250 DNA analysis fee.

¶ 26                                III. CONCLUSION

¶ 27    For the reasons stated, we affirm defendant's conviction of DUI (count I) (625 ILCS 5/11-501(a)(2) (West 2008)), we reverse defendant's conviction of DUI (count II) (625 ILCS 5/11-501(a)(1) (West 2008)), we modify the mittimus to reflect a $250 DNA analysis fee, and we remand for further proceedings. On remand, the State may retry defendant on count II if it desires. If the State chooses to forgo a retrial, we direct the trial court to conduct a new sentencing hearing as to defendant's conviction on count I.

¶ 28    Affirmed as modified in part and reversed in part; cause remanded.