2021 IL App (1st) 181548-U

FIFTH DIVISION
July 16, 2021

No. 1-18-1548

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. TH 490123 |
| VERNON EASLEY, | ) ) | Honorable Litricia Payne, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse defendant's conviction for driving under the influence of alcohol with a blood alcohol concentration exceeding 0.08 and remand for a new trial, as the State's failure to lay the proper foundation for defendant's breathalyzer test result constituted plain error.

¶ 2    After a bench trial, defendant Vernon Easley was convicted of driving under the influence of alcohol with a blood alcohol concentration (BAC) exceeding 0.08, and sentenced to six months' supervision. On appeal, he contends that the State failed to lay the necessary

foundation for his breathalyzer test result. For the following reasons, we reverse and remand for a new trial.

¶ 3     Defendant was charged with one count of driving with a BAC exceeding 0.08 (625 ILCS 5/11-501(a)(1) (West 2016) and one count of driving under the influence of a combination of alcohol and cannabis (625 ILCS 5/11-501(a)(5) (West 2016)).

¶ 4     Chicago police officer Elliot Musial testified that at approximately 9 p.m. on January 22, 2016, he was assigned to a roadside safety checkpoint in the 6400 block of South Western Avenue in Chicago. Musial directed vehicles into a parking lot where other officers were stationed.

¶ 5     Defendant, whom Musial identified in court, drove a vehicle toward the checkpoint and Musial stopped him "based on [a] sequence." Specifically, Musial was stopping one in five vehicles, as well as vehicles with "obvious traffic violations." When Musial motioned for defendant to stop, defendant continued past him. Musial yelled and hit the side of the vehicle to get defendant's attention. Defendant stopped approximately 30 feet beyond where Musial stood. Officer Matthew Tegtmeier walked to defendant's vehicle, and defendant exited.

¶ 6     On cross-examination, Musial confirmed that he did not see defendant commit any traffic violations. He did not notice defendant having difficulty exiting the vehicle, and had no further interaction with him.

¶ 7     Tegtmeier testified that he had been a police officer for 10 years and was trained in DUI investigations, field sobriety tests, and as a breathalyzer technician. Musial yelled at a vehicle that had "blown the point." Tegtmeier approached the driver, whom Tegtmeier identified in court as the defendant. Defendant had "bloodshot eyes" and smelled of burnt cannabis. Tegtmeier

walked with defendant to the "mobile processing unit," spoke with him, and smelled alcohol on his breath.

¶ 8     Defendant consented to field sobriety tests. Tegtmeier first administered the horizonal gaze nystagmus test by instructing defendant to watch as Tegtmeier moved a pen back and forth. Defendant showed "four clues of consumption." Tegtmeier then administered the one-legged stand test. Defendant showed clues of consumption, including using his arms for balance, swaying, and hopping on one foot. Tegtmeier also administered the walk-and-turn test and noticed that defendant showed additional clues of impairment, including that he stopped after each step, made a "big spinning motion" when he turned, and was "not meeting heel to toe." During the tests, defendant stated that he had consumed alcohol and cannabis. Tegtmeier could not recall how much alcohol defendant said he consumed.

¶ 9     Defendant agreed to a breathalyzer test, which Tegtmeier administered using an RBT-4 device that he was trained and certified in operating. When asked how many tests he had given using this particular RBT-4 before January 22, 2016, Tegtmeier answered: "Not many. Maybe two dozen at most." It was "pretty rare" for him to administer a breathalyzer test at the mobile processing unit.

¶ 10    The State questioned Tegtmeier regarding testing of the RBT-4:

> "Q. Okay. Is the RBT-4 machine the one that's used with the mobile units?
>
> A. The mobile processing unit, that's right. Usually, I'm at a station.
>
> Q. I see. And the RBT-4, is that machine regularly tested to ensure its accuracy?
>
> A. It is.

Q. Is the inspection for the accuracy, is that recorded somewhere?

A. Yes.

Q. Where is it recorded?

A. So there's a log inside the dock—Excuse me—inside the machine's case that stays with it.

Q. And that log or—Strike that. Is it actually required by statute, specifically under 11/501.2, that these accuracy checks be stored, maintained, and locked?

A. Yeah, I think so."

¶ 11 Tegtmeier then identified People's Exhibit No. 2 as a photocopy of the log recording the accuracy checks for the RBT-4 that was used for defendant's breathalyzer test. The State moved to enter the log into evidence. Defense counsel objected "as to hearsay as well as foundation." The court overruled the objection.

¶ 12 Tegtmeier testified that the log reflected that, before defendant's breath test in January 2016, the RBT-4 had last been tested for accuracy by the Illinois State Police on December 23, 2015. The log also reflected that, following defendant's arrest, the same device was checked and certified accurate on February 15, 2016.

¶ 13 Tegtmeier explained that, before a breath test is administered, the RBT-4 device performs a self-diagnostic test of the "ambient air" for traces of alcohol to ensure there is no "false positive." The device will "register '000' meaning it's not receiving any ambient interference," before indicating that it is ready to receive a breath sample.

¶ 14     The RBT-4 registered "000" before Tegtmeier instructed defendant to breathe into it. The device then printed a result, or "breath strip." Tegtmeier identified People's Exhibit No. 3 as an accurate photocopy of the breath strip, which included defendant's name and the result of the test. After defense counsel objected on the basis of the best evidence rule, the court admitted People's Exhibit No. 3 into evidence. Tegtmeier stated that it indicated that defendant's breath alcohol content was 0.09, and that the legal limit was 0.08.

¶ 15     On cross-examination, Tegtmeier acknowledged that police did not find cannabis on defendant. Defendant cooperated during the tests and acted like a "gentleman."

¶ 16     Following argument, the court found defendant guilty of driving under the influence of alcohol with a BAC exceeding 0.08, and acquitted him of driving under the influence of a combination of alcohol and cannabis.

¶ 17     Defendant filed a motion to reconsider, arguing that (1) the RBT-4 device was not "properly certified" at the time of defendant's test because the State failed to show that it was recertified after being moved to the roadside checkpoint, and (2) the copy of defendant's test result should not have been admitted under the best evidence rule.

¶ 18     On June 12, 2018, the trial court denied the motion to reconsider and imposed 6 months of supervision, 10 hours of minimal risk treatment classes, fines, and fees.

¶ 19     On appeal, defendant contends that the State failed to lay the necessary foundation for the log, People's Exhibit No. 2, under the business records exception to the rule against hearsay. As the log recording the accuracy testing of the breathalyzer was inadmissible, he argues that, in turn, the State also failed to lay the requisite foundation to admit his test result, which was necessary to prove that his BAC exceeded 0.08.

¶ 20 At the outset, defendant's claim is forfeited as it was not included in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (both a trial objection and a written posttrial motion raising the issue are required to preserve alleged errors). Defendant urges that we address the issue under either prong of the plain error doctrine, which applies when a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). A defendant must initially show that a clear or obvious error occurred. *Id.*

¶ 21 To admit the results of a breath test into evidence, the State must lay a proper foundation, including "evidence that the breath test machine used for the test * * * was working properly, and was tested regularly for accuracy." *People v. Claudio*, 371 Ill. App. 3d 1067, 1069-70 (2007) (citing *People v. Orth*, 124 Ill. 2d 326, 340 (1988); *People v. Larsen*, 323 Ill. App. 3d 1022, 1027 (2001)). "[T]he State must establish that the test was performed in accordance with section 11-501.2(a) of the Illinois Vehicle Code [citation] and the regulations promulgated by the Illinois Department of State Police." *People v. Clairmont*, 2011 IL App (2d) 100924, ¶ 12 (citing *Orth*, 124 Ill. 2d at 340). Those regulations require breathalyzer accuracy checks to be performed at least once every 62 days, and that the results of such accuracy checks are "recorded in the instrument's logbook or internal memory, or in the central repository." 20 Ill. Adm. Code 1286.230(a), (d), amended at 35 Ill. Reg. 18897 (eff. Oct. 31, 2011). If the State fails to lay an adequate foundation for the logbook, then the result of the breath test is likewise inadmissible. See *People v. Harris*, 2014 IL App (2d) 120990, ¶ 22 (finding that logbook was improperly

admitted, and "without evidence of the accuracy of the Breathalyzer machine, the results of the Breathalyzer test were improperly relied on"); *Clairmont*, 2011 IL App (2d) 100924, ¶ 12 ("Failure to comply with section 11-501.2(a) and the regulations renders the results of the test unreliable and, thus, inadmissible.").

¶ 22    Generally, "instrument logs certifying the accuracy of Breathalyzer machines are hearsay." *Harris*, 2014 IL App (2d) 120990, ¶ 21 (citing *People v. Russell*, 385 Ill. App. 3d 468, 475 (2008)). However, such evidence may be admitted where the State lays a proper foundation for its admission under the business records exception to the hearsay rule. *Id.* (citing 725 ILCS 5/115-5(a) (West 2010)); see also *Russell*, 385 Ill. App. 3d at 474 (records of breathalyzer's accuracy admissible as business records where evidence established the exhibits "were made in the regular course of business and it was the regular course of the police department to make such records at the time of the events in question").

¶ 23    The business records hearsay exception is codified in both the Code of Criminal Procedure of 1963 (Code) as well as the Illinois Rules of Evidence. Section 115-5(a) of the Code provides that "[a]ny writing or record * * * shall be admissible * * *, if made in [the] regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter." 725 ILCS 5/115-5(a) (West 2016). Similarly, Illinois Rule of Evidence 803(6) provides that records of regularly conducted activity are not excluded by the hearsay rule if they are "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation * * *." Ill. R. Evid. 803(6) (eff. Sep. 28, 2018). Our court has recognized that "Rule

803(6) and section 115-5(a) are substantially similar." *People v. Nixon*, 2015 IL App (1st) 130132, ¶ 108.

¶ 24    "In order to satisfy both [Rule 803(6) and section 115-5(a) of the Code], the party seeking to admit a business record has the burden of laying an adequate foundation for it." *Id.* ¶ 110. This includes showing that (1) the record was made as a memorandum or record of the act; (2) it was made in the regular course of business; and (3) "it was the regular course of the business to make such a record at the time of the act or within a reasonable time thereafter." *Id.* (citing *People v. Universal Public Transportation, Inc.*, 2012 IL App (1st) 073303-B, ¶ 48; *People v. Morrow*, 256 Ill. App. 3d 392, 397 (1993)).

¶ 25    Defendant suggests that the standard of review is *de novo*. We disagree. The crux of this appeal is whether the circuit court erred in finding that the State satisfied the business records exception to permit admission of the log of accuracy checks for the RBT-4 device. "Generally, evidentiary rulings are within the sound discretion of the trial court and will not be reversed unless the trial court abused that discretion." (Internal quotation marks omitted). *People v. Johnson*, 385 Ill. App. 3d 585, 596 (2008). Consistent with this principle, our precedent indicates that we review the admission of a breathalyzer log for an abuse of discretion. See *People v. Torruella*, 2015 IL App (2d) 141001, ¶ 24 ("Here, the issue is not whether the accuracy checks were hearsay, but whether the State satisfied the foundational requirements of the business records exception to the hearsay rule, which we review for an abuse of discretion."); *People v. Harris*, 2014 IL App (2d) 120990, ¶ 20 (applying abuse of discretion standard to defendant's contention that trial court erred in admitting log of breathalyzer accuracy checks "because the State failed to lay a proper foundation"). "An abuse of discretion will be found only where the

trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Id*.

¶ 26    Defendant asserts that the circuit court abused its discretion in finding that the State laid an adequate foundation for the log, arguing that Tegtmeier did not testify that entries were made in the regular course of business or that each log entry was made contemporaneous to each accuracy check or within a reasonable time thereafter.

¶ 27    We disagree with defendant to the extent he suggests that the court could not reasonably find that that the log entries were made in the regular course of business. Tegtmeier testified, in relevant part, that the breathalyzer device was "regularly tested to ensure its accuracy," and that results were recorded in a log stored "inside the machine's case that stays with it." He also agreed that it was "required by statute" that the log of such accuracy checks "be stored, maintained, and locked." Although Tegtmeier did not use the exact phrase "regular course of business," the trial court could reasonably conclude that his testimony indicated that accuracy checks were regularly conducted and recorded in the log kept with the device.

¶ 28    We reach a different conclusion, however, regarding defendant's argument that the State failed to establish that the log entries were made at the time of the accuracy checks or within a reasonable time thereafter. The record reveals that the State did not elicit any testimony regarding when the accuracy checks were recorded.

¶ 29    The State concedes that Tegtmeier did not testify that log entries were recorded at or near the time of the accuracy inspection, but posits that there "is no such temporal requirement" under a "close reading" of Rule 803(6). The State relies on the phrase "or from information transmitted by, a person with knowledge" in the Rule:

¶ 30    "[A] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, *or from information transmitted by, a person with knowledge*, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation \*\*\*." (Emphasis added.) Ill. R. Evid. 803(6) (eff. Sept. 28, 2018).According to the State, this phrase indicates that "the records must either be made: (1) 'at or near the time by,' or (2) 'from information transmitted by, a person with knowledge.' " In the State's view, an individual who performed an accuracy check "could transmit that information at a later time to someone else, who could then record it in the log and still satisfy the Rule so long as that person did so in the course of a regularly conducted business activity." Thus, the State claims that Tegtmeier's failure to testify about when the log entries were made is irrelevant.

¶ 31    We are not persuaded by the State's reading of Rule 803(6). Notably, the State cites no case supporting its interpretation of the Rule. Rather, our precedent indicates that the foundational requirements for admission of a business record include a showing that the record was made at or within a reasonable time of the event. The State's argument contradicts *Harris*, which held that a similar log was erroneously admitted where the State failed to elicit testimony regarding when its entries were made.

¶ 32    In *Harris*, the police officer who administered the defendant's breath test, Kozlowski, testified that the breathalyzer's log was kept in the regular course of business and that it reflected that the breathalyzer was last "certified accurate" by another officer, Brezinski. *Harris*, 2014 IL App (2d) 120990, ¶ 8. This court found that the log was improperly admitted since, although Kozlowski testified that it was kept in the regular course of business, he "never testified that 'it was the regular course of such business to make such memorandum or record *at the time of such*

*act, transaction, occurrence, or event or within a reasonable time thereafter*' " pursuant to section 115-5(a) of the Code. (Emphasis in original.) *Id.* ¶ 22. As the State "presented no testimony that Brezinski documented and signed the logbook 'at the time of such [certification] or within a reasonable time thereafter[,]' " we concluded that the State failed to lay the necessary foundation, and the admission of the log was an abuse of discretion. *Id.* (quoting 725 ILCS 5/115-5(a) (West 2010)).

¶ 33 *Harris* relied on section 115-5(a) of the Code, rather than Rule 803(6). However, other cases discussing Rule 803(6) have continued to recognize the foundational requirement that, to qualify under the business records exception, the document must have been made at or near the time of the recorded act. See *Nixon*, 2015 IL App (1st) 130132, ¶¶ 108-110 (stating that Rule 803(6) and section 115-5 of the Code are "substantially similar," and concluding that "[i]n order to satisfy both," the party seeking to admit a business record must make a showing "that it was the regular course of the business to make such a record at the time of the act or within a reasonable time thereafter"); see also *People v. Eagletail*, 2014 IL App (1st) 130252, ¶¶ 27-28 (in discussing whether breath test ticket was admissible, reciting Rule 803(6) and proceeding to recognize that the proffering party must show that the record was "made at the time of the act or within a reasonable time after").

¶ 34 In this case, the record makes clear that the State did not elicit testimony to satisfy this requirement for admitting the log of accuracy checks as a business record. In turn, it was error to admit defendant's breath test result. See *Harris*, 2014 IL (App) 2d 120990, ¶ 22 ("[w]ithout evidence of the accuracy of the Breathalyzer machine, the results of the Breathalyzer test were improperly relied on").

¶ 35    Having found error, we next consider whether either prong of the plain-error doctrine applies. "[T]he burden of persuasion rests with the defendant. [Citation.]" *Thompson*, 238 Ill. 2d at 613.

¶ 36    "Where the defendant claims first-prong plain error, a reviewing court must decide whether the defendant has shown that the evidence was so closely balanced the error alone severely threatened to tip the scales of justice. [Citation.]" *People v. Sebby*, 2017 IL 119445, ¶ 51. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case. [Citations.]" *Id.* ¶ 53. "A reviewing court's inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses's credibility." *Id*.

¶ 37    We agree with defendant that the evidence was closely balanced. Defendant was convicted under section 11-501(a) of the Vehicle Code, which provides that a person "shall not drive or be in actual physical control over any vehicle within this State" while "the alcohol concentration in the person's blood or breath is 0.08 or more based on the definition of blood and breath units in Section 11-501.2." 625 ILCS 5/11-501(a) (West 2016).[1] In turn, section 11-501.2 of the Vehicle Code provides that in a criminal trial for a violation of section 11-501, "evidence of the concentration of alcohol * * * in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, shall be admissible." 625 ILCS 5/11-501.2 (West 2016). Thus, proof of BAC requires a test result. See

---

[1] Notably, a violation of section 11-501(a)(1) is a "strict liability" form of DUI, and so proof of impairment is *not* an element of DUI under that section. See *People v. Martin*, 2011 IL 109102, ¶ 26 (explaining that the legislature enacted "strict liability" forms of misdemeanor DUI as well as "violations that require proof of impairment").

*People v. Thoman*, 329 Ill. App. 3d 1216, 1219 (2002) ("[S]ection 11-501(a)(1) of the Code requires the State to prove that the defendant's *whole* blood alcohol concentration was 0.08 or more. It can do this only by presenting evidence of an actual whole blood alcohol concentration test result or from blood serum alcohol concentration test results converted into whole blood equivalents. [Citation.]") (emphasis in original)).

¶ 38     Apart from the breath test result, no evidence established that defendant had a BAC of 0.08 or more. This case is unlike one involving a conviction for the separate offense of driving while "under the influence of alcohol" (625 ILCS 5/11-501(a)(2) (West 2016)), where testimony regarding signs of intoxication factor into the assessment of whether the evidence is closely balanced. See, *e.g.*, *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 46. Thus, although Tegtmeier testified that defendant smelled of alcohol and showed signs of impairment during the field sobriety tests, that testimony does not show that the evidence was closely balanced.

¶ 39     Simply put, defendant's conviction depended upon the breath test result, whose admission was erroneous. Accordingly, we find that the evidence was closely balanced, and that the error "alone threated to tip the scales of justice against the defendant, regardless of the seriousness of the error." (Internal quotation marks omitted.) *Sebby*, 2017 IL 119445, ¶ 48. As defendant satisfied the first prong of the plain error doctrine, we need not consider his alternative claim of second-prong plain error.

¶ 40     In so holding, we note that a retrial does not pose double jeopardy concerns. The United States and Illinois constitutions allow retrial "when a conviction has been overturned because of an error in the trial proceedings," but prohibit retrial "if the evidence introduced at the initial trial was insufficient to sustain the conviction. [Citations.]" *People v. Drake*, 2019 IL 123734, ¶ 20. "Retrial is the proper remedy if the evidence presented at the initial trial, *including any*

*improperly admitted evidence*, was sufficient to sustain the conviction. [Citation.]" (Emphasis added.) *Id.* ¶ 21. In determining the sufficiency of the evidence, a reviewing court considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

¶ 41 Viewing the trial evidence—including the improperly admitted 0.09 BAC breath test result—in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of driving with a BAC exceeding 0.08, in violation of section 11-501(a)(1) of the Vehicle Code (625 ILCS 5/11-501(a)(1) (West 2016)). Therefore, double jeopardy does not bar a new trial.

¶ 42 We reverse the judgment of the circuit court of Cook County and remand for a new trial.

¶ 43 Reversed and remanded.